# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHARON GARRETT,                    : Civil Action No. 07-5416-NLH-AMD
                                   :
     Plaintiff,               :
                                   :
   v.                          : **OPINION**
                                   :
ATLANTICARE HEALTH SYSTEM,   :
INC.,                              :
                                   :
     Defendant.               :

**APPEARANCES:**

Richard S. Swartz, Esquire
KARP, KARP, & VIRANT, P.C.
3070 Bristol Pike
BLDG. 2, Ste. 231
Bensalem, PA 19020
    *Attorney for Plaintiff*

Sarah Beth Johnson, Esquire
Fox Rothschild LLP
Midtown Building, Suite 400
1301 Atlantic Avenue
Atlantic City, NJ 08401-7212
    *Attorney for Defendant*


**HILLMAN**, District Judge

    This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims for retaliation and discrimination.  For the reasons expressed below, Defendant's Motion for Summary Judgment motion will be granted in part and denied in part.

Plaintiff, Sharon Garrett, was employed by Defendant, AtlantiCare Health System, Inc. ("AtlantiCare"), as an Administrative Secretary for over ten years prior to being terminated in February 2007. While working at AtlantiCare, Plaintiff reported to Lorraine Thayer, who was the Clinical Director of Ambulatory Care. Plaintiff had satisfactory performance evaluations in March 2004, March 2005, and March 2006. In 2006, Plaintiff took protected FMLA leave from October 2d to December 25th to recover from a broken ankle which required surgery.

Due to the absence of Plaintiff, Thayer hired temporary employees to perform Plaintiff's duties. One temporary employee, Charlotte Miller, stood out to Thayer as an asset. Specifically, Thayer described Miller as self-directed and hard working, with excellent secretarial skills. Defendant asserts that during the time temporary employees were performing Plaintiff's duties, deficiencies in Plaintiff's work came to the attention of Thayer. Specifically, Defendant asserts that Thayer found that some minutes were not completed and those that were completed had inaccuracies. Moreover, Defendant asserts that purchase orders were out of date, the petty cash was not reconciled, and the filing system was disorganized and unrecognizable. Defendant alleges that Thayer had not been aware of these performance

issues prior to the time Plaintiff went out on leave.

On December 29, 2006, Marida Tindell, AtlantiCare's Leave Administrator, notified Plaintiff by letter that her FMLA leave had been exhausted and that "although the law does not require it AtlantiCare is granting you an unprotected leave of absence" of twelve weeks, on the condition that her medical condition warranted it. (<u>See</u> Cert. of Sarah Beth Johnson, Exhibit H.) The letter specified, "an unprotected leave of absence means that a job is not being held for you" and "a job is not guaranteed at AtlantiCare." (<u>Id.</u>) The letter also informed Plaintiff of her rights if her pre-leave position was filled upon her return and she was terminated. In that scenario, pursuant to company policy, Plaintiff had a six-month period to be reinstated in a new position within the company and her original hire date would be used for seniority purposes.

Approximately one month later, on January 23, 2007, Amy Bird-Bailey, a member of AtlantiCare's Human Resources Department, posted Plaintiff's position as open on AtlantiCare's intranet system so that candidates could apply and be interviewed. This action was taken after it was determined by Thayer that a permanent employee was needed to fill Plaintiff's position because the position now reported to two directors. Pursuant to company policy an employee's position is typically posted for rehiring as soon as the employee begins his or her

unprotected leave of absence.  At the time the position was posted, Defendant alleges that Thayer wanted to hire Miller.

Within a week, on January 29, 2007, Plaintiff notified Tindell that she was able to return to work on February 1, 2007. In accordance with Tindell's instructions in her December 29, 2006 letter, Plaintiff provided a "return to work" certification from her doctor.  Upon hearing that Plaintiff was medically cleared to return to work, Thayer set up a meeting with Plaintiff.  On February 2, 2007, Plaintiff met with Thayer and Bird-Bailey.  In the meeting, Thayer informed Plaintiff that while she was out on leave, her work was found to be inadequate and corrections needed to be made.  Thayer told Plaintiff she could reapply for her position and they could discuss how to make the necessary corrections.  Thayer brought a memorandum she had prepared for her own use to the meeting, listing the above mentioned performance issues she had discovered with Plaintiff's work.

The parties dispute whether this memo constituted discipline.  Whatever it was, it was apparently insufficient, standing alone, to preclude Defendant from rehiring Plaintiff, as Thayer invited Plaintiff to reapply for her pre-leave position during the meeting.  She also told Plaintiff they were considering offering the position to Miller.  Plaintiff stated that she was not going to reapply for the position, exclaiming:

"why would I reapply for a job that I was doing for ten years."
(Cert. of Johnson, Exhibit A.)

At the end of the meeting, Bird-Bailey provided Plaintiff with her business card and instructed Plaintiff to contact her if she wanted help in finding a position within AtlantiCare. During the meeting, Bird-Bailey noticed that Plaintiff was "limping badly." However, Defendant asserts that Bird-Bailey did not doubt that Plaintiff was able to return to work.

Plaintiff never contacted Bird-Bailey for help. Rather, Plaintiff sent Tindell a letter with another copy of her medical clearance documentation. In the letter, Plaintiff stated that "I plan to actively seek another position within AtlantiCare; however, I'm still interested in my former position at the Health Plex, should it become available." (Cert. of Johnson, Exhibit N.) Tindell did not take any action with regard to the letter. Tindell said she did not take any action because the letter expressed that Plaintiff had talked with Thayer and Bird-Bailey, and she assumed that Plaintiff had mentioned the same information to them.

Sandy Festa, Administrative Director of the Health Plex, was also copied on the letter. Festa did not contact Plaintiff either, but did send an email to Bird-Bailey and Tindell. In her email, Festa stated that Plaintiff was still interested in her former position and asked Bird-Bailey if she needed a copy of the

letter.  Bird-Bailey claims she never received that communication.  Furthermore, Thayer asserts that she never became aware that Plaintiff was interested in her pre-leave position.

Sometime in the middle of February, a meeting was held between Bird-Bailey and Miller regarding the open administrative position.  The parties dispute whether this meeting constituted a formal job interview.  Soon after the meeting Miller was offered the position.  Due to personal reasons, Miller did not accept the position.  The position was ultimately filled by another individual on March 30, 2007.

In the meantime, on February 20, 2007, Tindell sent Plaintiff an email notifying her that she was being administratively terminated from her employment with AtlantiCare.  On February 22, 2007, Tindell followed that up with a letter notifying Plaintiff of her termination.  Why these communications were sent at the time they were sent remains a bit of a mystery.  Tindell explained that once an employee returns from unprotected leave and is not reinstated into that position or another position they are ultimately terminated.  The letter specifically stated that "your position was filled, prior to your medical clearance on February 1, 2007 and your employment was terminated with AtlantiCare effective that date."  (Cert. of Johnson, Exhibit K.)

Defendant acknowledges that this statement is false. It is false in two ways. First, Plaintiff's position was not filled before February 1st - in fact it had not even been filled when the letter was sent in late February. Nor does it make sense that Plaintiff was terminated as of February 1st since Defendant had met with Defendant's representatives the next day and was invited to reapply for her former position. Tindell claims she believed that the position had been filled at that time because that was the typical reason that an employee on unprotected leave was terminated. Ultimately, Plaintiff did apply and interview for other positions within AtlantiCare but was never hired.

Plaintiff filed a two-count Complaint against Defendant, claiming that her termination violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2614(a)(1), and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, <u>et</u> <u>seq.</u> Currently before the court is Defendant's Motion for Summary Judgment.

**DISCUSSION**

### A.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  <u>Id.</u>  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  <u>Marino
v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)
(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  <u>Celotex Corp.
v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A
party opposing summary judgment must do more than just rest upon

mere allegations, general denials, or vague statements.  <u>Saldana</u>
<u>v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

    **B.   Plaintiff's FMLA Retaliation Claim**

    Plaintiff's Complaint asserts that her termination was
retaliation for having taken medical leave in violation of the
FMLA. (<u>See</u> Compl. at ¶ 33.)  The FMLA protects against
retaliation for taking protected leave under the Act.  As
explained by the FMLA regulations, "an employer is prohibited
from discriminating against employees or prospective employees
who have used FMLA leave."  29 C.F.R. § 825.220(c).  Further,
"employers cannot use the taking of FMLA leave as a negative
factor in employment actions, such as hiring, promotions or
disciplinary actions; nor can FMLA leave be counted under 'no
fault' attendance policies."  <u>Id.</u>  To establish a prima facie
case of retaliation under the FMLA, a plaintiff must show that:
(1) she took FMLA leave, (2) she suffered an adverse employment
decision, and (3) the adverse decision was causally related to
her leave.  <u>Lepore v. Lanvision Systems, Inc.</u>, 113 Fed. Appx.
449, 452 (3d Cir. 2004) (citing <u>Conoshenti v. Public Service</u>
<u>Electric & Gas Co.</u>, 364 F.3d 135 (3d Cir. 2004)).

    Once a plaintiff makes out a prima facie case, the usual
<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) burden
shifting framework is implicated.  <u>Lepore</u>, 113 Fed. Appx. at 453
(citing <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 432 (3d Cir.

2001)).  The defendant must provide a legitimate,
nondiscriminatory reason for the termination.  <u>McDonnell Douglas</u>,
411 U.S. at 802.  Then, the burden shifts back to the plaintiff
to establish that the reason provided by the defendant was
pretextual.  <u>Id.</u>

          1.  <u>Prima Facie Case</u>

Plaintiff has established the first two elements of the
prima facie case.  First, she applied for and took FMLA leave
from October 2, 2006 to December 25, 2006.  Second, she suffered
an adverse employment decision when she was terminated via email
on February 20, 2007.  Plaintiff has also presented sufficient
evidence with respect to the third element, causal connection.

The third element of the prima facie case, causal
connection, can be established in a number of ways.  There are no
exclusive ways to show causation.  <u>See</u> <u>Kachmar v. Sunguard Data
Sys.</u>, 109 F.3d 173, 177 (3d Cir. 1997).  The Third Circuit has
found that causation can be established with temporal proximity
or through circumstantial evidence such as ongoing antagonism.
<u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279-80 (3d Cir.
2000).  Plaintiff alleges both temporal proximity and ongoing
antagonism.  Each will be addressed in turn.

          a.  Temporal Proximity

Temporal proximity that is "unduly suggestive" satisfies the
causation element of a plaintiff's prima facie case at the

summary judgment stage.  Id.; see also Thomas v. Town of
Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of
Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) ("Even if
timing alone could ever be sufficient to establish a causal link,
. . . the timing of the alleged retaliatory action must be
unusually suggestive of retaliatory motive before a causal link
will be inferred.")).  Using time to satisfy the causation
element of the prima facie case, however, requires consideration
"with a careful eye to the specific facts and circumstances
encountered."  Farrell, 206 F.3d at 279 (citing Kachmar v.
SunGard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997)).  "There is
clearly a difference between two days and nineteen months."  Id.
(citations omitted); see also Williams v. Philadelphia Housing
Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (holding
that two months was not "unduly suggestive" in an ADA claim);
Thomas, 351 F.3d at 114 (holding that three weeks was not "unduly
suggestive" in a sexual discrimination claim); Fasold v. Justice,
409 F.3d 178, 189-90 (3d Cir. 2005)(holding that three months was
sufficient to establish a temporal proximity in an ADEA claim).

     Here, Plaintiff claims that she was terminated in
retaliation for taking FMLA leave.  Plaintiff's FMLA leave
expired on December 25, 2006, and she was first notified of her
termination from her employment via email on February 20, 2007,
effective as of February 1st.  If we define the time period to be

measured as the last date of protected activity - December 25,
2006, which was the last day of her FMLA leave - and the date of
the adverse action - February 1, 2007, which was the date of
termination[1] - it appears the temporal proximity is approximately
37 days or slightly more than five weeks.[2]  The five or six weeks
between the end of her FMLA leave and her effective termination
date is not, by itself, unduly suggestive that her adverse
employment action was causally related to her leave.  See
Williams, 380 F.3d at 760; Thomas, 351 F.3d at 114.  However, in
cases like these where "the temporal proximity is not so close as
to be unduly suggestive," courts have recognized that "timing

---

[1] Although the action is taken on the 20th of February,
Defendant made the action effective as of the 1st.  The Court
sees no reason why Defendant should not be held to its own
statement as to the effective date, especially in light of its
obligation at this stage to resolve all factual disputes in favor
of the non-moving party.

[2] An argument can be made that the temporal proximity in this
case is actually much less.  Although Plaintiff's FMLA leave
expired in late December and she was carried voluntarily on what
Defendant calls "unprotected" leave, she did not express her
desire to return to her old job until January 29, 2007.  If we
define the protected activity as "applying after the expiration
of her FMLA leave for her unfilled former position" the temporal
proximity is only three days.  Moreover, it appears that
Defendant choose as the termination date - February 1, 2007 - the
exact same date Plaintiff's doctor said was the first day she
could return to work.  When viewed through Farrell's "careful
eye" the facts here are suggestive of a causal connection between
the exercise of leave and the failure to return Plaintiff to her
previous position.  However, in light of our conclusion that the
overall circumstances establish enough facts for a causal
connection, we need not resolve the issue of whether the law
compels a shorter time period than the 37 days previously noted
above for consideration of temporal proximity.

plus other evidence may be an appropriate test." See id. Thus, it is Plaintiff's burden to demonstrate the causal link with other circumstantial evidence.

### b.  Circumstantial Evidence

If the timing of the events is not "unduly suggestive," the plaintiff can still show a causal link with other circumstantial evidence, such as evidence of ongoing antagonism or inconsistent reasons for terminating the employee.  Farrell, 206 F.3d at 280-81.  The Third Circuit has held a causal connection is established when there is a pattern of antagonism, as evidenced by unfair criticism and unwarranted discipline during the period between the protected activity and the adverse employment action.  Zelinski v. Pa State Police, 108 Fed. Appx. 700, 706 (3d Cir. 2004).

Plaintiff asserts that she was subjected to a number of incidents that together constituted a pattern of antagonism following her return from unprotected leave.  First, Plaintiff claims that as soon as she returned to work Defendant raised issues with her past performance, even though she was never disciplined prior to her taking FMLA leave.  As set forth above, Plaintiff was presented with a memorandum on February 2, 2007 by Thayer that alleged deficiencies in her performance, which Plaintiff argues constituted an act of discipline.  Defendant asserts that it was merely an effort by Thayer to raise certain

performance issues with Plaintiff and was not an act of discipline because it was not the requisite form necessary to constitute discipline under company policy. Regardless, the record is clear that Defendant could not have raised these issues with Plaintiff any sooner because they were first discovered by the temporary employees who filled in for Plaintiff during her leave. Moreover, Plaintiff does not dispute any of the alleged performance issues. Accordingly, the Court finds that the Memorandum does not constitute an act of antagonism. See Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 806 (7th Cir. 2001) ("The fact that the leave permitted the employer to discover the problems can not logically be a bar to the employer's ability to fire the deficient employee.").

Second, Plaintiff alleges that Defendant required her to "formally apply" for her pre-leave position but did not require the same of Miller, who was working in the position as a temporary employee. While the record does not support Plaintiff's assertion directly, it does suggest that Defendant treated Plaintiff and Miller in a materially different way. Plaintiff asserts - and the record supports it - that she did reapply and provides her letter to Tindell, on which Festa was copied, as evidence of this. Defendant asserts that this did not count as reapplying because Bird-Bailey instructed Plaintiff to contact her if she reconsidered and wanted to reapply for the

14

position.  Defendant asserts that Thayer and Bird-Bailey were
under the impression that Plaintiff was not interested in her
pre-leave position.

While Plaintiff never contacted them directly to express an
interest in pre-leave position, she did express her interest in
her pre-leave position to Tindell and Festa.  Moreover, Festa
sent an email to Bird-Bailey informing her that Plaintiff was
interested in her pre-leave position.  While Bird-Bailey asserts
she did not receive the communication, a reasonable jury might
find that Bird-Bailey was aware of Plaintiff's interest.  Given
that Miller was considered to have applied to the position by
merely expressing an interest to Thayer, a reasonable jury could
find that Plaintiff's letter to Tindell and Festa amounted to
reapplying to her pre-leave position.

What matters most, however, is the inconsistent manner in
which Defendant treated Plaintiff and Miller.  While both Miller
and Plaintiff and expressed an interest in the position to
Defendant, only Miller was considered to have applied and was
actually interviewed.  An inconsistent application of formal
policies in way that disadvantages Plaintiff's re-application for
her pre-leave position is potential evidence of a causal
connection between the leave and the termination.  Thus, there
remains a disputed material fact as to whether or not Defendant
selectively enforced its hiring policies.

Third, Plaintiff also tries to establish a pattern of antagonism by claiming that Defendant concealed that her pre-leave position remained unfilled until March 30th. Specifically, Plaintiff asserts that although she sent a letter to Tindell, which was copied to Festa, expressing her interest in her pre-leave position, Defendant never responded to her. Plaintiff also asserts that she received no response from Defendant after Festa sent an email to Bird-Bailey stating that Plaintiff was interested in her pre-leave position. Moreover, the termination letter sent to Plaintiff on February 22nd said that the position had been filled by February 1st although it was not actually filled until March 30th.

Defendant, on the other hand, asserts that neither Tindell nor Festa was in charge of hiring. Further, Bird-Bailey claims she never became aware of Plaintiff's interest in her pre-leave position. Finally, Tindell asserts that the language of the February 22nd letter was generic, and that a filled position was the typical reason for the termination of an employee returning from unprotected leave. Tindell was unfamiliar with the particular circumstances in this case and thus sent a generic termination letter.

Viewing the uncontested facts in their entirety, the Court is convinced that Plaintiff has proffered sufficient evidence to make out a prima facie case. Soon after Plaintiff's medical

condition improved enough to return from her leave, the majority of which was protected FMLA leave, she reapplied for her position which remained open and for which she was qualified. The Defendant's reaction was to give a temporary employee favored treatment in the application process, mislead Plaintiff into believing her position had been filled when it had not, and backdated her termination to the date before she had been brought in for an interview and led to believe she could reapply for her old job. These facts, taken as whole are sufficient to create a genuine issue of material fact with respect to all three elements of Plaintiff's prima facie case.

   2.   Defendant's Legitimate Reasons for Termination

While Plaintiff has made out a prima facie case, Defendant has proffered legitimate, non-discriminatory reasons for terminating her employment. "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3rd Cir. 1994). The defendant has a "relatively light burden" to meet. Id. Defendant provides three reasons for terminating plaintiff. First, Plaintiff was not entitled to automatic reinstatement pursuant to Defendant's unprotected leave policy. Second, because Plaintiff's position had been posted, AtlantiCare's policies required Plaintiff to interview for her

former position and Plaintiff refused to do so.  Third,
performance issues discovered when Plaintiff was out on FMLA
caused Defendant to question whether Plaintiff was the right
person for the job.  These reasons, taken as true, are
sufficiently legitimate and non-discriminatory and meet
Defendant's light burden.

          3.   Plaintiff Alleges Defendant's Reasons
               Pretextual

     Since Defendant has established legitimate and
nondiscriminatory reasons for terminating Plaintiff's employment,
for Plaintiff to be successful on her FMLA retaliation claim, she
must provide evidence that Defendant's reasons were pretextual.
"To avoid summary judgment, the plaintiff's evidence rebutting
the employer's proffered legitimate reasons must allow a
factfinder reasonably to infer that each of the employer's
proffered non-discriminatory reasons, was either a post hoc
fabrication or otherwise did not actually motivate the employment
action (that is, the proffered reason is a pretext)."  Fuentes,
32 F.3d at 764 (internal citation omitted).  To show pretext, the
plaintiff must produce evidence which demonstrates a genuine
issue of fact with respect to whether the defendant's stated
reason for the termination is a fabrication designed to conceal
an unlawful reason.  See Kulumani v. Blue Cross Blue Shield
Ass'n, 224 F.3d 681, 684 (7th Cir. 2000).  A pretext for
discrimination means more than an unusual act; it means something

worse than a business error; pretext means deceit used to cover one's tracks.  See id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000)).

Plaintiff claims that Defendant's reasons for terminating her are pretextual.  Specifically, Plaintiff puts forth three arguments for why Defendant's reasons for terminating Plaintiff are pretextual.  First, Plaintiff claims that Defendant's assertion that Plaintiff failed to formally apply is pretextual because it selectively enforced its purported hiring policies. Second, Plaintiff asserts that Defendant's assertion that Plaintiff's former position had been filled is pretextual because the position was not filled until after Plaintiff was terminated. Both of these arguments seem to go to Defendant's second legitimate argument.  Third, Plaintiff claims that her alleged termination for performance issues is pretextual because Plaintiff had positive performance evaluations prior to taking FMLA.  This argument goes to Defendant's third legitimate argument.

With respect to Plaintiff's arguments regarding Defendant's second legitimate reason, the Court is satisfied that sufficient evidence exists to create a genuine issue of material fact as to whether Plaintiff's alleged failure to interview is pretextual. As mentioned above, there is evidence in the record from which a reasonable jury could conclude that Plaintiff reapplied for the

job.  Furthermore, as set forth above, there is evidence from which a reasonable jury could conclude that Plaintiff's former position was not filled until after her termination. Accordingly, the Court finds that a genuine issue of material fact exists as to whether Defendant's second legitimate reason, that Plaintiff was terminated for her refusal to interview for her pre-leave position, is pretext.

With respect to Plaintiff's argument regarding Defendant's third legitimate reason, the Court is likewise satisfied that sufficient evidence exists to create a genuine issue of material fact as to whether Plaintiff's alleged performance issues are pretextual.  The record is clear that Defendant did not raise any issues with Plaintiff's performance before she went out on leave and that prior to going on leave Plaintiff had good performance evaluations.  Although Defendant only learned the alleged performance issues for the first time when Plaintiff was out on leave, without more, the Court cannot say at this time that no reasonable jury could possibly find in favor of Plaintiff on this issue.  Accordingly, the Court finds that a genuine issue of material fact exists as to whether Defendant's third legitimate reason, that there were issues with Plaintiff's performance, is pretext.

Thus, Plaintiff has presented sufficient facts to create a genuine issue of material fact with respect to whether

Defendant's second and third proposed legitimate reasons are pretext. As a general matter, a plaintiff must rebut all of the defendant's proffered reasons to survive summary judgement. <u>See</u> <u>Fuentes</u> 32 F.3d at 764. In this case, however, Defendant's first proffered legitimate reason is not dispositive. Stated differently, even if Plaintiff was not entitled to automatic reinstatement under the FMLA, the practical effect of the Defendant's Unprotected Leave Policy was to allow her certain rights to reapply. If that policy was implemented in a way intended to retaliate against Plaintiff for her invocation of FMLA leave, such conduct is not immunized simply because Defendant could have terminated her back on February 1st. Accordingly, the Court finds that Plaintiff need not come forward with evidence suggesting this first proffered reason to be pretext in order to survive summary judgment.[3] Thus, as Plaintiff has demonstrated a genuine issue of fact as to whether Defendant's second and third proposed legitimate reasons are pretextual, the Motion for Summary Judgment must be denied on this count.

---

[3] We hold, in the alternative, that sufficient evidence exists that the first proffered reason is also pretext in light of Defendant's post-hoc letter terminating Plaintiff as of February 1st based on the false premise that her prior position had been filled.

**C.   Plaintiff's NJLAD claim**

Plaintiff also alleges that she was terminated because her employer perceived her to be "too handicapped to work." (Compl. ¶ 37).  To establish a prima facie case for disability discrimination pursuant to the NJLAD, a plaintiff must prove: (1) she was disabled or handicapped or perceived to be disabled within the meaning of the statute; (2) she was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap.  Conshenti v. Pub. Ser. Elec. & Gas Co., 364 F.3d 135, 150 (3d Cir. 2004) (citing Bosshard v. Hackensack Univ. Med. Center, 783 A.2d 731, 739 (N.J. Super. Ct. App. Div. 2001)).

Under the NJLAD "handicapped" is defined as:

> [S]uffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on service or guide dog, wheelchair, or other remedial appliance or device, or from any mental, psychological or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.  Handicapped shall also mean suffering from AIDS or HIV infection.

N.J.S.A. § 10:5-5(q). Included in this definition are handicapped or disabled people who do not have a substantial or permanent impairment at the time of the alleged discrimination. Andersen v. Exxon Co., 446 A.2d 486 (N.J. Super. Ct. App. Div. 1982). It has been found that a temporary inability to work while recuperating from surgery or injury is also a handicap under NJLAD. Soules v. Mount Holiness Mem. Park, 808 A.2d 863, 865-66 (N.J. Super. Ct. App. Div. 2002).

Plaintiff fails to meet the requirement of the first prong of the prima facie case. At the time of the alleged discrimination, Plaintiff had finished recuperating from her ankle surgery and was deemed well enough to return to work by her doctor. While Plaintiff was still "limping" when she attended the meeting with Ms. Thayer and Ms. Bird-Bailey on February 2, 2007, this is not an impairment because her doctor cleared her to return to work. There is nothing in the record to suggest that Defendant had any reason to doubt the determination of Plaintiff's doctor that she was able to work. While Plaintiff could have qualified as handicapped during the time she was recuperating from surgery, the day she alleged to be perceived as handicapped she had been cleared to work and thus was no longer recuperating. Furthermore, "when the existence of a handicap is not readily apparent, expert medical evidence is required." Viscik v. Fowler Equipment Co., 800 A.2d 826, 835 (N.J. Super.

Ct. 2002).  There is no medical evidence in the record that suggests Plaintiff is handicapped.  Rather, the note from her doctor suggests the contrary.

Plaintiff also fails to present any evidence that Defendant perceived Plaintiff as disabled.  Ms. Bird-Bailey noticing that Plaintiff was "limping badly" does not establish that Defendant perceived Plaintiff as disabled.  While Plaintiff does not need to have a substantial or permanent impairment to be qualified as handicapped, her "limping" can not be seen as an impairment of any degree to her ability to work.  See Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996) (holding that an employer being aware that the plaintiff had a limp was insufficient to establish that the employer perceived the plaintiff as disabled).  Thus, Plaintiff fails to establish the first prong of the prima facie cause under NJLAD.

Therefore, Plaintiff has failed to raise a genuine issue of material fact with regard to the prima facie case for disability discrimination pursuant to NJLAD and summary judgment is granted in the favor of the Defendant for Plaintiff's NJLAD claim.

## **CONCLUSION**

For the reasons expressed above, Defendant's Motion for Summary Judgment is granted in part and denied in part. An appropriate order accompanies this Opinion.

Dated: __October 21, 2009__       ___s/ Noel L. Hillman_____
                                    HON. NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey